**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| KORTEK INDUSTRIES PTY LTD., | |
| Plaintiff, | Civil Action No. 2:26-cv-00680 |
| v. | |
| FERGUSON ENTERPRISES, LLC, | **JURY TRIAL DEMANDED** |
| Defendant. | |

## COMPLAINT FOR PATENT INFRINGEMENT

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff Kortek Industries Pty Ltd. ("Kortek") files this Complaint for Patent Infringement and Damages against Ferguson Enterprises, LLC ("Ferguson" or "Defendant"), and would respectfully show the Court as follows:

## PARTIES

1. Plaintiff Kortek is an Australian proprietary (private) company limited by shares, with its principal place of business located at PO Box 323, Alderley, Queensland 4051, Australia. Kortek is an Australian engineering firm that develops sensors, controllers, and gateways for building cloud-connected systems.

2. On information and belief, Defendant Ferguson Enterprises, LLC is a limited liability company organized and existing under the laws of the Commonwealth of Virginia, with its principal place of business at 751 Lakefront Commons, Newport News, Virginia 23606. Ferguson is registered to do business in the State of Texas and maintains regular and established places of business in this District, including at 7946 State Highway 121, Frisco, Texas 75034. Ferguson may be served with process through its registered agent, Corporate Creations Network Inc., 2595 North Dallas Parkway, Suite 350, Frisco, Texas 75034.

1

3.      On information and belief, Ferguson directly and/or indirectly develops, designs, manufactures, distributes, markets, offers to sell and/or sells infringing products and services in the United States, including in the Eastern District of Texas, and otherwise directs infringing activities to this District in connection with its products and services.

## JURISDICTION AND VENUE

4.      This civil action arises under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.*, including without limitation 35 U.S.C. §§ 271, 281, 283, 284, and 285. This is a patent infringement lawsuit over which this Court has subject matter jurisdiction under, *inter alia*, 28 U.S.C. §§ 1331 and 1338(a).

5.      This United States District Court for the Eastern District of Texas has general and specific personal jurisdiction over Ferguson because, directly or through intermediaries, Ferguson has committed acts within the District giving rise to this action and is present in and transacts and conducts business in and with residents of this District and the State of Texas.

6.      Kortek's causes of action arise, at least in part, from Ferguson's contacts with and activities in this District and the State of Texas.

7.      Ferguson has committed acts of infringement of the patents-in-suit within this District and the State of Texas by making, using, selling, offering for sale, and/or importing in or into this District and elsewhere in the State of Texas, products claimed by the patents-in-suit, including without limitation products made by practicing the claimed methods of the patents-in-suit. Ferguson, directly and through intermediaries, makes, uses, sells, offers for sale, imports, ships, distributes, advertises, promotes, and/or otherwise commercializes such infringing products into this District and the State of Texas. Ferguson has placed such infringing products into the stream of commerce via established distribution channels with the knowledge and/or

2

understanding that such products were being offered for sale, sold to, and/or used by customers in Texas and this District. Ferguson regularly conducts and solicits business in, engages in other persistent courses of conduct in, and/or derives substantial revenue from goods and services provided to residents of this District and the State of Texas.

8.     This Court has personal jurisdiction over Ferguson pursuant to Tex. Civ. Prac. & Rem. Code § 17.041 *et seq*. Personal jurisdiction exists over Ferguson because Ferguson has minimum contacts with this forum as a result of business regularly conducted within the State of Texas and within this District, and, on information and belief, specifically as a result of, at least, committing the tort of patent infringement within Texas and this District. This Court has personal jurisdiction over Ferguson, in part, because Ferguson does continuous and systematic business in this District, including by providing infringing products and services to the residents of the Eastern District of Texas that Ferguson knew would be used within this District, and by soliciting business from the residents of the Eastern District of Texas. For example, Ferguson is subject to personal jurisdiction in this Court because, *inter alia*, Ferguson has regular and established places of business in this District, and directly and through agents regularly does, solicits, and transacts business in the Eastern District of Texas. In addition, on information and belief, witnesses from Ferguson's Frisco, Texas place of business will be required for deposition and/or trial. Accordingly, this Court's jurisdiction over Ferguson comports with the constitutional standards of fair play and substantial justice and arises directly from Ferguson's purposeful minimum contacts with the State of Texas.

9.     This Court also has personal jurisdiction over Ferguson because, in addition to Ferguson's own online website and advertising directed to this District, Ferguson has also made its products available within this judicial district.

10. Venue is proper in this Court as to Defendant Ferguson Enterprises, LLC under 28 U.S.C. §§ 1391(b) and (c) and 28 U.S.C. § 1400(b) based on information set forth herein, which is hereby repeated and incorporated by reference, because Ferguson has committed and induced acts of infringement in this District and has and maintains regular and established places of business in this District. *See In re Cray Inc.*, 871 F.3d 1355, 1362–63 (Fed. Cir. 2017).

11. Ferguson maintains its Texas registered office within this District, at 2595 North Dallas Parkway, Suite 350, Frisco, Texas 75034, in Denton County, and has designated Corporate Creations Network Inc. as its Texas registered agent at that address. Ferguson has been continuously registered with the Texas Secretary of State under Texas SOS File Number 0005732406 since an effective registration date of January 31, 1983, a period of more than forty-three years, and holds Texas Taxpayer Number 15412117713. As reflected in the Texas Comptroller of Public Accounts Franchise Tax Account Status record as of August 1, 2026, Ferguson's SOS Registration Status is active and its Right to Transact Business in Texas is active, with a State of Formation of Virginia and a mailing address of 751 Lakefront Commons, Newport News, Virginia 23606-3322. Ferguson has therefore consented to the jurisdiction of Texas courts, availed itself of the protections and privileges of Texas law, and maintained a continuous statutory presence in this District for more than four decades.

12. Ferguson has and maintains multiple regular and established places of business within this District, each of which Ferguson maintains, staffs, leases or owns, operates, and holds out to the public as its own, and each of which is assigned an internal Ferguson branch or showroom designation and published by Ferguson with a dedicated street address and business hours on Ferguson's own websites and in third-party manufacturer and dealer directories, including without limitation: the Ferguson Home / Ferguson Bath, Kitchen & Lighting Gallery

showroom bearing internal designation 0064 at 7946 State Highway 121 (Sam Rayburn Tollway), Frisco, Texas 75034, in Collin County, in this District, which Ferguson advertises as "serving Frisco, TX and surrounding areas," and which third-party manufacturers including Jacuzzi identify as an authorized Ferguson showroom and dealer under Ferguson's internal designation "FEIFRISCO-64" [fergusonhome.com/showroom/branch/frisco-tx-showroom-0064; jacuzzi.com/en-us/baths/dealer/feifrisco-64-frisco-texas; yelp.com/biz/ferguson-home-frisco; mapquest.com/us/texas/ferguson-home-377560071(each last visited August 11, 2026)]; the Ferguson Plumbing/PVF and HVAC branch bearing internal designation 0063 at 10071 West University Drive, McKinney, Texas 75071, in Collin County, in this District [ferguson.com/store/tx/mckinney/plumbingpvf-0063; locally.com/store/89234/ferguson-plumbing-supply; yelp.com/biz/ferguson-plumbing-supply-mckinney-2(each last visited August 11, 2026)]; the Ferguson Plumbing/PVF wholesale plumbing and heating-and-cooling branch bearing internal designation 0067 at 151 North Interstate 35 East, Building B, Suite 129, Denton, Texas 76205, in Denton County, in this District, which appears in Ferguson's own published store sitemap [mapquest.com/us/texas/ferguson-796484032; ferguson.com/sitemap-store-sitemap.xml(each last visited August 11, 2026)]; the Ferguson Waterworks branch bearing internal designation 3081 at 7982 U.S. Highway 69 North, Tyler, Texas 75706, in Smith County, in this District, expressly listed on Ferguson Waterworks' own "Find a Location" directory and on Ferguson's published store sitemap [ferguson.com/store/tx/tyler/waterworks-3081; fergusonwaterworks.com/find-a-location/; yelp.com/biz/ferguson-waterworks-tyler-3(each last visited August 11, 2026)]; the Ferguson Industrial / Ferguson Mechanical-Industrial branch bearing internal designation 1319 at 907 Linco Road, Longview, Texas 75604, in Gregg County, in this District, supplying quality industrial pipe, valves, fittings, and MRO products

5

[ferguson.com/store/tx/longview/mechanicalindustrial-1319; yelp.com/biz/ferguson-industrial-longview(each last visited August 11, 2026)]; and the Ferguson Industrial / Ferguson Mechanical-Industrial branch bearing internal designation 2075 and internal identifier "Beaumont TX – PVF – IND" at 4949 Washington Boulevard, Beaumont, Texas 77707, in Jefferson County, in this District, supplying industrial pipe, valves, fittings, MRO products, fabrication, flow control, and supply-chain services [ferguson.com/store/tx/beaumont/mechanicalindustrial-2075(last visited August 11, 2026)].

13.    Ferguson's acts of infringement, inducement, advertising, marketing, offering for sale, sale, shipment, delivery, installation, provisioning, monitoring, and servicing of the Accused Products extend to and occur throughout this District, including through Ferguson's Beaumont Industrial operations, its Longview Industrial facility, its Frisco showroom and Frisco registered office, its McKinney and Denton branches, and its Tyler Waterworks facility, each located in this District. Throughout this District, Ferguson advertises, markets, offers to sell, sells, and ships products, including the Accused Products, through its nationwide interactive electronic commerce platforms at www.ferguson.com, www.fergusonhome.com, and www.fergusonwaterworks.com, which provide store-specific pages permitting customers to place orders for delivery or in-store pickup at designated Ferguson branches within this District, and which publish centralized customer service and commercial order lines [ferguson.com; fergusonhome.com/showroom/showroom-directory; fergusonwaterworks.com; ferguson.com/s/contactus(each last visited August 11, 2026)]. Ferguson further maintains resident field sales, technical, and specification personnel responsible for Texas sales territories encompassing this District, including personnel dedicated to Intelligent Utility Solutions, to contractor and utility infrastructure products, and to geosynthetics and stormwater products

[fergusonwaterworks.com/contact-sales/(last visited August 11, 2026)]. Ferguson additionally operates a dedicated Ferguson Waterworks "Meter & Automation Group" and "Intelligent Utility Solutions" business through which it markets, sells, offers to sell, installs, provisions, configures, commissions, monitors, and services network-connected and wireless-enabled devices and systems—including advanced metering infrastructure (AMI), automatic meter reading (AMR), Internet of Things (IoT) remote monitoring, leak detection, water quality monitoring, GPS data collection, GIS mapping, wastewater CSO/SSO and inflow-and-infiltration monitoring, and cloud-based and machine-learning analytics platforms—to municipalities, water districts, rural water systems, utility authorities, and contractors located throughout this District, and as to which Ferguson represents that it provides "metering sales; system audit and design; experienced installation labor and project monitoring; complete project management, from the first install to the last; a proprietary data collection system," together with an "in-house support team; after-the-sale service and repair; customized maintenance program; and access to Ferguson's proprietary installation and project management software," delivered through approximately 200 Waterworks locations and trained associates nationwide, and in connection with which Ferguson has publicly documented deployments in which it retained installation subcontractors to physically install wireless AMI endpoints establishing two-way wireless communication between water meters and the utility supplier [ferguson.com – Intelligent Utility Technology Solutions; fergusonwaterworks.com – AMI Solutions; fergusonwaterworks.com – Intelligent Utility Solutions; waterworld.com – Ferguson Waterworks Meter and Automation Group; fergusonwaterworks.com – Neptune AMI Deployment case study(each last visited August 11, 2026)].

14.    Ferguson's contacts with this District arise from and are part of a broader, continuous, and systematic presence throughout the State of Texas. Ferguson Enterprises, LLC is a Virginia limited liability company expressly identified in its parent's Exhibit 21.1 List of Significant Subsidiaries filed with the United States Securities and Exchange Commission, and is publicly and expressly identified as the U.S. operating subsidiary through which Ferguson sells plumbing supplies, HVAC products, waterworks products, and building supplies to professional contractors and homeowners, transacting business under numerous registered assumed and "doing business as" names including "Ferguson Enterprises," "Ferguson Enterprises of Virginia, LLC," "Ferguson Enterprises, LLC of Virginia," "ACF Environmental," "Action Plumbing Supply," "Airefco," "Aaron & Co.," and "Andrews Lighting & Hardware Gallery" [sec.gov – Ex. 21.1 (List of Significant Subsidiaries); corporate.ferguson.com – Our Leadership; ferguson.com(each last visited August 11, 2026)]. Ferguson operates approximately 1,700 locations with approximately 35,000 associates serving customers in all fifty states, Canada, Puerto Rico, Mexico, and the Caribbean, and holds itself out as North America's largest value-added distributor of essential water and air solutions in a $340 billion market, including through its Ferguson Industrial division, which alone advertises more than 150 locations nationwide [linkedin.com/company/ferguson-official; ferguson.com – Ferguson Industrial; corporate.ferguson.com (each last visited August 11, 2026)]. Ferguson maintains more than twenty offices, branches, distribution centers, and showrooms throughout Texas, including locations in or serving Austin, Brookshire, Carrollton, Corpus Christi, Dallas, El Paso, Euless, Fort Worth, Grand Prairie, Houston, La Porte, Lakeway, Lewisville, Lubbock, Marble Falls, McGregor, Midland, Mission, Odessa, Pflugerville, Pharr, Plano, Round Rock, San Antonio, San Marcos, Spring, Temple, and Waco, and specifically including a distribution center at 2055 South Main Street, McGregor; branches at 11232 Indian

Trail and 1403 Slocum Street, Dallas; fire and fabrication operations at 9851 and 9855 Genard Road, Houston; a Waterworks administrative branch at 6825 Wallisville Road, Houston; an operations facility at 21250 Foster Road, Spring; and branches at 2683 West Euless Boulevard, Euless, 2551 North Mays Street, Round Rock, 17100 West Interstate 10, San Antonio, 871 Entertainment Way, Grand Prairie, 2315 Rutland Drive, 1110 East 51st Street, 20 Strandtman Cove, and 700 East St. Elmo Road, Austin, 1520 Luna Road, Carrollton, 1900 West Expressway 83, Mission, 2435 FM 359 Road South, Brookshire, multiple Corpus Christi locations at 221 Junior Beck Drive and 5017 and 5513 Saratoga Boulevard, and an El Paso branch serving as a satellite to Ferguson de Mexico in Ciudad Juárez [indeed.com – Ferguson office locations in Texas; thebluebook.com – Ferguson Enterprises locations and contacts; ferguson.com/store/tx/mcgregor/distributioncenter-0474; ferguson.com/store/tx/grand+prairie/mechanicalindustrial-0320; bizjournals.com – Ferguson inks a big lease in San Marcos(each last visited August 11, 2026)]. Ferguson has continued to expand its Texas real estate holdings, leasing approximately 35,000 square feet at Clovis Crossing, 1603 Clovis Barker Road, San Marcos, and approximately 207,000 square feet at the ATX 130 site near Austin-Bergstrom International Airport, while owning a 137,000-square-foot supply store and warehouse in Round Rock and a 39,000-square-foot showroom and warehouse in South Austin, collectively exceeding half a million square feet of owned and leased Austin-area real estate [communityimpact.com – Ferguson signs lease in San Marcos; bizjournals.com – Ferguson inks a big lease in San Marcos(each last visited August 11, 2026)], and Ferguson employs Texas-resident personnel, including branch managers, operations managers, and general managers assigned to specific Texas addresses [thebluebook.com – Ferguson Enterprises locations and contacts; bbb.org – Ferguson Enterprises, Spring, TX(each last visited August 11, 2026)]. By reason of the

foregoing, Ferguson has purposefully availed itself of the privilege of conducting business in Texas and in this District, has committed and induced acts of infringement in this District, has and maintains regular and established places of business in this District, and has consented to and is subject to the jurisdiction of this Court, and venue is proper in this District.

## THE PATENTS-IN-SUIT

15.    On October 11, 2016, United States Patent No. 9,465,377 ("the '377 patent"), entitled "Wireless power, light and automation control," was duly and legally issued by the United States Patent and Trademark Office ("USPTO"). Barrie Davis, Benjamin Davis, and Matthew Davis are the named inventors of the '377 patent. The '377 patent issued from U.S. Patent Application No. 13/985,549, the United States national stage of International Application No. PCT/AU2011/001666, filed on December 29, 2011 and published as WO 2012/109696, and claims priority to U.S. Provisional Application Nos. 61/443,714, filed on February 16, 2011; 61/468,119, filed on March 28, 2011; and 61/556,751, filed on November 7, 2011. The '377 patent contains 51 claims. The '377 patent claims patent-eligible subject matter and is valid and enforceable. Kortek is the owner of the entire right, title, and interest in and to the '377 patent, including the right to bring this suit for injunctive relief and damages and the right to sue and recover all past, present, and future damages for infringement of the '377 patent. Ferguson is not licensed to the '377 patent, either expressly or implicitly, nor does it enjoy or benefit from any rights in or to the '377 patent whatsoever. A true and correct copy of the '377 patent is attached hereto as **Exhibit A**.

16.    On March 7, 2017, United States Patent No. 9,590,427 ("the '427 patent"), entitled "Adaptable wireless power, light and automation system," was duly and legally issued by the USPTO. Barrie Davis, Benjamin Davis, and Matthew Davis are the named inventors of the '427 patent. The '427 patent issued from U.S. Patent Application No. 14/272,317, filed on May 7, 2014,

which is a continuation of International Application No. PCT/AU2012/000959, filed on August 15, 2012, and claims priority to U.S. Provisional Application Nos. 61/556,751, filed on November 7, 2011; 61/641,166, filed on May 1, 2012; 61/652,485, filed on May 29, 2012; 61/678,020, filed on July 31, 2012; and 61/678,810, filed on August 2, 2012. The '427 patent contains 17 claims. The '427 patent claims patent-eligible subject matter and is valid and enforceable. Kortek is the owner of the entire right, title, and interest in and to the '427 patent, including the right to bring this suit for injunctive relief and damages and the right to sue and recover all past, present, and future damages for infringement of the '427 patent. Ferguson is not licensed to the '427 patent, either expressly or implicitly, nor does it enjoy or benefit from any rights in or to the '427 patent whatsoever. A true and correct copy of the '427 patent is attached hereto as **Exhibit B**.

17.    On October 1, 2019, United States Patent No. 10,429,869 ("the '869 patent"), entitled "Wireless power, light and automation control," was duly and legally issued by the USPTO. Barrie Davis, Benjamin Davis, and Matthew Davis are the named inventors of the '869 patent. The '869 patent issued from U.S. Patent Application No. 15/287,739, filed on October 7, 2016, which is a continuation of U.S. Patent Application No. 13/985,549 (now U.S. Patent No. 9,465,377), filed as International Application No. PCT/AU2011/001666 on December 29, 2011, and shares the '377 patent's chain of priority. The '869 patent contains 23 claims. The '869 patent claims patent-eligible subject matter and is valid and enforceable. Kortek is the owner of the entire right, title, and interest in and to the '869 patent, including the right to bring this suit for injunctive relief and damages and the right to sue and recover all past, present, and future damages for infringement of the '869 patent. Ferguson is not licensed to the '869 patent, either expressly or implicitly, nor does it enjoy or benefit from any rights in or to the '869 patent whatsoever. A true and correct copy of the '869 patent is attached hereto as **Exhibit C**.

11

18.     On December 8, 2020, United States Patent No. 10,862,313 ("the '313 patent"), entitled "Adaptable wireless power, light and automation system," was duly and legally issued by the USPTO. Barrie Davis, Benjamin Davis, and Matthew Davis are the named inventors of the '313 patent. The '313 patent issued from U.S. Patent Application No. 15/925,767, filed on March 20, 2018, which is a continuation of U.S. Patent Application No. 14/272,436, filed on May 7, 2014 (now U.S. Patent No. 9,923,376), which is a division of International Application No. PCT/AU2012/000959, filed on August 15, 2012, and claims priority to U.S. Provisional Application Nos. 61/556,751, 61/641,166, 61/652,485, 61/678,020, and 61/678,810. The '313 patent contains 12 claims. The '313 patent claims patent-eligible subject matter and is valid and enforceable. Kortek is the owner of the entire right, title, and interest in and to the '313 patent, including the right to bring this suit for injunctive relief and damages and the right to sue and recover all past, present, and future damages for infringement of the '313 patent. Ferguson is not licensed to the '313 patent, either expressly or implicitly, nor does it enjoy or benefit from any rights in or to the '313 patent whatsoever. A true and correct copy of the '313 patent is attached hereto as **Exhibit D**.

19.     On February 7, 2023, United States Patent No. 11,574,535 ("the '535 patent"), entitled "Adaptable wireless power, light and automation system for household appliances," was duly and legally issued by the USPTO. Barrie Davis, Benjamin Davis, and Matthew Davis are the named inventors of the '535 patent. The '535 patent issued from U.S. Patent Application No. 17/113,267, filed on December 7, 2020, which is a continuation of U.S. Patent Application No. 15/925,767 (now U.S. Patent No. 10,862,313), which is a continuation of U.S. Patent Application No. 14/272,436 (now U.S. Patent No. 9,923,376), which is a division of International Application No. PCT/AU2012/000959, filed on August 15, 2012, and claims priority to U.S. Provisional

12

Application Nos. 61/556,751, 61/641,166, 61/652,485, 61/678,020, and 61/678,810. The '535 patent contains 16 claims. The '535 patent claims patent-eligible subject matter and is valid and enforceable. Kortek is the owner of the entire right, title, and interest in and to the '535 patent, including the right to bring this suit for injunctive relief and damages and the right to sue and recover all past, present, and future damages for infringement of the '535 patent. Ferguson is not licensed to the '535 patent, either expressly or implicitly, nor does it enjoy or benefit from any rights in or to the '535 patent whatsoever. A true and correct copy of the '535 patent is attached hereto as **Exhibit E**.

20. The '377, '427, '869, '313, and '535 patents are collectively referred to herein as the "Kortek Patents" or the "patents-in-suit."

21. Plaintiff Kortek is the owner of the entire right, title, and interest in and to each of the Kortek Patents. The named inventors of each of the Kortek Patents—Barrie William Davis, Benjamin John Davis, and Matthew Kai Davis—assigned all right, title, and interest in and to the inventions of the Kortek Patents and their underlying applications to Xitel Pty. Limited by written assignment effective November 7, 2012, and Xitel Pty. Limited thereafter assigned all right, title, and interest in and to the same to Kortek by written assignment effective October 25, 2013. Each of those assignments has been recorded with the United States Patent and Trademark Office as follows: the '377 patent at Reel/Frame 031488/0353 and Reel/Frame 031488/0410; the '427 patent at Reel/Frame 032844/0595 and Reel/Frame 032844/0610; the '869 patent at Reel/Frame 039962/0623 and Reel/Frame 039962/0626; the '313 patent at Reel/Frame 054247/0848 and Reel/Frame 054247/0886; the '535 patent at Reel/Frame 054562/0408 and Reel/Frame 054562/0455. Neither the identification of the inventors on the face of the Kortek Patents nor the intermediate assignment to Xitel Pty. Limited diminishes Kortek's ownership; by operation of the

13

foregoing recorded assignments, Kortek holds the entire right, title, and interest in and to each of the Kortek Patents, including all rights to exclude others, to license, and to sue for and recover damages for past, present, and future infringement, and Kortek has standing to bring and maintain this action in its own name. Each of the Kortek Patents is presumed valid under 35 U.S.C. § 282.

22.    The Kortek Patents generally disclose and claim devices, systems, and methods for the wireless control, measurement, and automation of power, lighting, and other electrical equipment. The Kortek Patents identify problems with conventional power, lighting, and automation control systems, which typically required dedicated wiring, proprietary controllers, and fixed configurations that were expensive to install, difficult to adapt or reconfigure, and prone to technological obsolescence. Conventional approaches to wirelessly controlling electrical equipment also depended on intermediary infrastructure—such as a wireless router, access point, hub, or bridge—before a consumer's mobile device could discover, configure, or control the equipment, adding cost and complexity and making the initial configuration of "headless" devices (devices lacking their own display and keyboard) cumbersome and unreliable.

23.    The devices, systems, and methods claimed in the Kortek Patents were not well-understood, routine, or conventional at the time of the inventions, whether considered individually or as ordered combinations. Rather, the claimed inventions are directed to specific, concrete improvements in the functioning of power, light, and automation control systems themselves, including, *inter alia*: a power control device whose microprocessor and wireless transceiver are configured to open a direct peer-to-peer wireless communications link with a commodity smartphone or tablet controller by simulating a network access point, without passing through any wireless router, access point, hub, or other intermediary (*see, e.g.*, '377 patent, claim 1; '869 patent, claim 1); and a dual-mode wireless control module configured to operate in a first mode using a

14

peer-to-peer communications standard to communicate directly with a personal controller and, alternatively, in a second mode using a non-peer-to-peer communications standard to communicate through a network access point in a wireless local area network (*see, e.g.*, '427 patent, claim 1; '313 patent, claim 1; '535 patent, claim 1). These specific arrangements of wireless controllers, microprocessors, power control circuits, transceivers, and switching devices permit electrical equipment to be securely monitored, controlled, and automated over a local wireless network or cloud platform, improve the manner in which wireless control devices are discovered, configured, and operated, and reflect specific technological solutions to specific technological problems rather than any abstract idea, law of nature, or natural phenomenon. Whether the elements of the claims of the Kortek Patents, individually or as ordered combinations, were well-understood, routine, or conventional at the time of the inventions is a question of fact, and the claims of each of the Kortek Patents recite specific hardware in specific, unconventional configurations that were not well-understood, routine, or conventional at the time of the inventions.

24.     To the extent required, Plaintiff has complied with 35 U.S.C. § 287, as Plaintiff does not make or sell products in the U.S.

## **ACCUSED INSTRUMENTALITIES**

25.     Ferguson manufactures, uses, tests, markets, offers for sale, sells and/or imports into the United States Wi-Fi-enabled devices (*see, e.g.*, https://www.minka.com/F768L-BNW/CL.html (last visited August 11, 2026)). Hereafter, the term "Accused Instrumentalities" or "Accused Products" refers to all products manufactured, used, tested, imported, or sold by or on behalf of Ferguson practicing the patents-in-suit and all processes employed by Ferguson that practice the patents-in-suit, consisting of at least Ferguson's Wi-Fi-enabled products, including, by way of example and without limitation, the list of exemplary products attached hereto as

**Exhibit K**. On information and belief, Ferguson offers for sale and sells Accused Products, including through its Ferguson Home e-commerce platform (formerly Build.com). See, e.g., https://www.fergusonhome.com/minkaaire-molino/s1761425 (Ferguson Home product listing for the Minka-Aire Molino F742L-BNK Smart ceiling fan); https://www.fergusonhome.com/minkaaire-windmolen/s1636545 (Ferguson Home product listing for the accused F870L-BS); https://www.fergusonhome.com/minkaaire-barn/s1649357 (Ferguson Home product listing for the accused F864L-BNK) (each last visited August 11, 2026). On information and belief, Ferguson has made, used, tested, marketed, offered for sale, sold, and/or imported the Accused Products throughout the six years preceding the filing of this Complaint and continuing to the present; as to each of the Kortek Patents, the acts of infringement alleged herein began no earlier than, and have continued since, the issuance date of that patent.

26.    The Accused Products are Wi-Fi-enabled "Smart" ceiling fan and lighting products, sold by Ferguson under the Minka-Aire brand, that each incorporate the same Olibra LLC ("Bond") "Smart by Bond" Wi-Fi control module, firmware, and Bond Home application platform, and that therefore infringe in the same general way. Each Accused Product contains an embedded microprocessor, a wireless transceiver, and a receiver/power control circuit that controls the supply of electricity to the product's fan motor and/or light. A consumer controls the Accused Product wirelessly from a smartphone or tablet running the Bond Home application, which is available on the Apple App Store and Google Play. During setup, the Accused Product broadcasts its own "Bond Config" Wi-Fi network—simulating a wireless network access point—to which the consumer's smartphone connects directly, without any router, hub, or other intermediary ("*No Hub Required*"), thereby establishing a direct, peer-to-peer wireless communications link between the smartphone and the Accused Product. The Bond Home application then hands the Accused

Product off to the consumer's home wireless network, after which the consumer can control the fan and light—including on/off, fan speed, light brightness, timers, and schedules—through the home wireless network and remotely over the internet.

27.     In this manner, the Accused Products embody the specific wireless power, light, and automation control architecture claimed in the Kortek Patents: a power control device that establishes a direct peer-to-peer wireless communications link with a commodity smartphone or tablet controller by simulating a network access point, and that alternatively communicates through the consumer's wireless local area network using a non-peer-to-peer communications standard, so as to control the supply of electricity to an electrical apparatus such as a fan motor or light.

**BACKGROUND**

28.     Kortek Industries Pty Ltd is an Australian proprietary (private) company focused on the design of an Industrial Internet of Things (IIoT) energy control platform comprising enterprise-grade hardware, firmware, and knowhow developed by a management team that has created transformative solutions for leading global brands such as Sony, Siemens, Raytheon, Kodak, Visa, Mastercard, and HSBC. The company's unique technology includes a range of power measurement and switching devices that let utilities and industrials securely monitor, control, and automate the power supplied to electrical equipment through a local wireless network or cloud platform. Applications include demand response, grid management, industrial automation, and predictive maintenance. Kortek's world-first, patented architecture gives infrastructure customers reliable, future-proofed devices that can be purchased in quantity and installed without concern for the technological obsolescence common with competing IoT solutions.

29.     Kortek is backed by a team of veteran engineers with a proven track record in the development and mass production of complex electronics for consumer, commercial, banking,

17

military, and industrial applications. Barrie Davis, Kortek's Founder, designed, manufactured, and sold significant products for over 45 years. Many of Mr. Davis's pioneering achievements have formed the foundations for what have become common industry practices. His proven ability to innovate underpins Kortek's transformative technology.

30.    Kortek is a company created to commercialize the intellectual property and engineering of Xitel Pty Ltd. ("Xitel"). Mr. Davis formed Xitel in 1976 to provide contract design services for electronic products that featured microprocessors, a relatively new technology at the time. Prior to forming Xitel, Mr. Davis had already completed several successful products. Significant among these was the Information Electronics Ltd IE131 programmable CRT terminal, which used an Intel 8008 processor, 1103 dynamic RAM, and 1702A EPROM, all cutting edge in its day. For the IE131, Mr. Davis was awarded a Master's Degree in Electrical Engineering from Adelaide University after referral to the Massachusetts Institute of Technology (MIT) for examination due to the revolutionary nature of its design.

31.    The IE131 went into full production in early 1973 and was the world's first microcomputer-controlled CRT terminal, predating the Apple 1 by three years. The IE131 was sold in volume to the Australian Federal Government and utilities.

32.    In 2013, Kortek was established to commercialize the intellectual property and know-how developed by Xitel related to the Internet of Things. Kortek is focused on creating unique embedded architecture and devices for the control and measurement of electrical equipment in infrastructure applications. Kortek's technology covers a diverse range of industrial, agriculture, medical, utility, and municipal market verticals. As an early entrant in the IoT, Kortek continues to file patents and holds granted applications that cover a number of cornerstone aspects.

33.     Kortek has at least 14 PCT filings, over 10 national phase primary or divisional applications, and 39 granted patents (US, EU, JP, AU, KR and CN).

### FERGUSON'S KNOWLEDGE AND WILLFUL INFRINGEMENT

34.     Ferguson has had knowledge of each of the Kortek Patents, and of its infringement thereof, since no later than the date of this Complaint, which attaches true and correct copies of each of the Kortek Patents as **Exhibits A** through **E** and element-by-element claim charts as **Exhibits F** through **J** demonstrating how the Accused Products practice every element of at least one exemplary claim of each of the Kortek Patents.

35.     Notwithstanding that knowledge, Ferguson has continued and, on information and belief, will continue to make, use, test, market, sell, offer for sale, and/or import the Accused Products, and to encourage and instruct its customers and end users—through product listings, marketing materials, in-store displays and demonstrations, and installation and setup instructions made available through its e-commerce platforms and showrooms—to purchase and use the Accused Products in a manner that directly infringes the Kortek Patents. Ferguson's continued infringement despite its knowledge of the Kortek Patents, and despite the objectively high likelihood that its actions constitute infringement of valid and enforceable patents, is deliberate, wanton, and willful, making this an egregious case of infringement warranting enhanced damages under 35 U.S.C. § 284 and rendering this an exceptional case under 35 U.S.C. § 285.

36.     In the alternative, Ferguson has been and remains willfully blind to the Kortek Patents and to its infringement thereof. Ferguson is a sophisticated enterprise—holding itself out as North America's largest value-added distributor of essential water and air solutions, with approximately 1,700 locations and approximately 35,000 associates—that, on information and

belief, maintains legal and compliance resources concerning intellectual property, yet has taken deliberate actions to avoid learning of the Kortek Patents and of its infringement thereof.

## COUNT I
## PATENT INFRINGEMENT OF THE '377 PATENT

37.     Plaintiff restates and realleges the preceding paragraphs of this Complaint as if fully set forth herein.

38.     Ferguson has, under 35 U.S.C. § 271(a), directly infringed, and continues to directly infringe, literally and/or under the doctrine of equivalents, one or more claims, including without limitation at least one claim of the '377 patent, by making, using, testing, selling, offering for sale and/or importing into the United States Ferguson's Accused Products.

39.     Ferguson also indirectly infringes the '377 patent by actively inducing the direct infringement by third parties under 35 U.S.C. § 271(b). Ferguson has knowingly (since at least the date of this Complaint) and intentionally actively aided, abetted and induced others to directly infringe at least one claim of the '377 patent (such as its customers in this District and throughout the United States). Ferguson continues to induce infringement of the '377 patent. For example, Ferguson sells the Accused Products with, and directs purchasers to, installation and setup instructions that walk the user through downloading the Bond Home application and completing the "Smart by Bond" setup process—including connecting the user's smartphone directly to the Accused Product's "Bond Config" Wi-Fi network and thereafter connecting the Accused Product to the user's home wireless network—operations that Exhibit F maps to elements of Claim 1 of the '377 patent. By distributing those instructions and directing its customers to follow them, Ferguson specifically intends that its customers configure and use the Accused Products in a manner that directly infringes the '377 patent. In the alternative, to the extent any element of any asserted claim of the '377 patent is found to be supplied by an end user's smartphone, tablet, or

20

wireless network rather than by the Accused Products themselves, Ferguson has contributorily infringed and is a contributory infringer under 35 U.S.C. § 271(c). With knowledge of the '377 patent (since at least the date of this Complaint), Ferguson offers to sell and sells within the United States, and/or imports into the United States, the Accused Products, each of which incorporates an embedded Olibra "Smart by Bond" Wi-Fi control module that constitutes a material part of the invention claimed in the '377 patent and that is especially made and especially adapted for use in an infringement of the '377 patent. The embedded "Smart by Bond" Wi-Fi control module is not a staple article or commodity of commerce suitable for substantial noninfringing use: its only substantial use is to enable the accused wireless configuration and control functionality of the Accused Products in combination with the Bond Home application.

40.    Ferguson has knowledge that its activities concerning the Accused Products infringe one or more claims of the '377 patent. On information and belief, Ferguson will continue to encourage, aid, or otherwise cause third parties to import, sell, offer for sale, and use the Accused Products (which are acts of direct infringement of the '377 patent) and Ferguson has and will continue to encourage those acts with the specific intent to infringe one or more claims of the '377 patent. Further, Ferguson provides information and technical support to its customers, including product manuals, brochures, demonstrations, and website materials encouraging its customers to purchase and instructing them to use Ferguson's Accused Products (which are acts of direct infringement of the '377 patent). Alternatively, Ferguson knows and/or will know that there is a high probability that the importation, sale, offer for sale, and use of the Accused Products constitutes direct infringement of the '377 patent but took deliberate actions to avoid learning of these facts.

41.     On information and belief, Ferguson's infringement of the '377 patent has been willful and merits increased damages.

42.     On information and belief, Ferguson has known that its activities concerning the Accused Products infringed one or more claims of the '377 patent since at least the date of this Complaint.

43.     On information and belief, Ferguson has made no attempt to design around the claims of the '377 patent.

44.     On information and belief, Ferguson did not have a reasonable basis for believing that the claims of the '377 patent were invalid.

45.     On information and belief, Ferguson's Accused Products are available to businesses and individuals throughout the United States and in the State of Texas, including in this District.

46.     Kortek has been damaged as the result of Ferguson's willful infringement. Upon information and belief, Ferguson will continue to infringe one or more claims of the '377 patent unless and until it is enjoined by this Court.

47.     Ferguson has caused and will continue to cause Kortek irreparable injury and damage by infringing one or more claims of the '377 patent. Kortek will suffer further irreparable injury, for which it has no adequate remedy at law, unless and until Ferguson is enjoined from infringing the claims of the '377 patent.

48.     The claim chart attached hereto as **Exhibit F** describes how the elements of exemplary Claim 1 of the '377 patent are infringed by the Accused Products. As detailed in Exhibit F, the Accused Products—as exemplified by the Minka-Aire Nauticus F768L-BNW/CL Smart ceiling fan offered for sale and sold by Ferguson—practice every element of at least Claim 1 of

the '377 patent, literally or under the doctrine of equivalents. Each Accused Product incorporates the same Olibra "Smart by Bond" Wi-Fi control module and infringes in the same general way, and the components and functionality identified in Exhibit F are representative of the components and functionality present in all Accused Products. Exhibit F provides details regarding only one example of Ferguson's infringement, and only as to a single patent claim, and is not intended to be an exhaustive or limiting explanation of every manner in which the Accused Products infringe the '377 patent. Plaintiff reserves its right to provide greater detail and scope via its Infringement Contentions at the time required under this Court's scheduling order.

**COUNT II**
**PATENT INFRINGEMENT OF THE '427 PATENT**

49.     Plaintiff restates and realleges the preceding paragraphs of this Complaint as if fully set forth herein.

50.     Ferguson has, under 35 U.S.C. § 271(a), directly infringed, and continues to directly infringe, literally and/or under the doctrine of equivalents, one or more claims, including without limitation at least one claim of the '427 patent, by making, using, testing, selling, offering for sale and/or importing into the United States Ferguson's Accused Products.

51.     Ferguson also indirectly infringes the '427 patent by actively inducing the direct infringement by third parties under 35 U.S.C. § 271(b). Ferguson has knowingly (since at least the date of this Complaint) and intentionally actively aided, abetted and induced others to directly infringe at least one claim of the '427 patent (such as its customers in this District and throughout the United States). Ferguson continues to induce infringement of the '427 patent. For example, Ferguson sells the Accused Products with, and directs purchasers to, installation and setup instructions that walk the user through downloading the Bond Home application and completing the "Smart by Bond" setup process—including connecting the user's smartphone directly to the

Accused Product's "Bond Config" Wi-Fi network and thereafter connecting the Accused Product to the user's home wireless network—operations that Exhibit G maps to elements of Claim 1 of the '427 patent. By distributing those instructions and directing its customers to follow them, Ferguson specifically intends that its customers configure and use the Accused Products in a manner that directly infringes the '427 patent. In the alternative, to the extent any element of any asserted claim of the '427 patent is found to be supplied by an end user's smartphone, tablet, or wireless network rather than by the Accused Products themselves, Ferguson has contributorily infringed and is a contributory infringer under 35 U.S.C. § 271(c). With knowledge of the '427 patent (since at least the date of this Complaint), Ferguson offers to sell and sells within the United States, and/or imports into the United States, the Accused Products, each of which incorporates an embedded Olibra "Smart by Bond" Wi-Fi control module that constitutes a material part of the invention claimed in the '427 patent and that is especially made and especially adapted for use in an infringement of the '427 patent. The embedded "Smart by Bond" Wi-Fi control module is not a staple article or commodity of commerce suitable for substantial noninfringing use: its only substantial use is to enable the accused wireless configuration and control functionality of the Accused Products in combination with the Bond Home application.

52.    Ferguson has knowledge that its activities concerning the Accused Products infringe one or more claims of the '427 patent. On information and belief, Ferguson will continue to encourage, aid, or otherwise cause third parties to import, sell, offer for sale, and use the Accused Products (which are acts of direct infringement of the '427 patent) and Ferguson has and will continue to encourage those acts with the specific intent to infringe one or more claims of the '427 patent. Further, Ferguson provides information and technical support to its customers, including product manuals, brochures, demonstrations, and website materials encouraging its customers to

24

purchase and instructing them to use Ferguson's Accused Products (which are acts of direct infringement of the '427 patent). Alternatively, Ferguson knows and/or will know that there is a high probability that the importation, sale, offer for sale, and use of the Accused Products constitutes direct infringement of the '427 patent but took deliberate actions to avoid learning of these facts.

53.    On information and belief, Ferguson's infringement of the '427 patent has been willful and merits increased damages.

54.    On information and belief, Ferguson has known that its activities concerning the Accused Products infringed one or more claims of the '427 patent since at least the date of this Complaint.

55.    On information and belief, Ferguson has made no attempt to design around the claims of the '427 patent.

56.    On information and belief, Ferguson did not have a reasonable basis for believing that the claims of the '427 patent were invalid.

57.    On information and belief, Ferguson's Accused Products are available to businesses and individuals throughout the United States and in the State of Texas, including in this District.

58.    Kortek has been damaged as the result of Ferguson's willful infringement. Upon information and belief, Ferguson will continue to infringe one or more claims of the '427 patent unless and until it is enjoined by this Court.

59.    Ferguson has caused and will continue to cause Kortek irreparable injury and damage by infringing one or more claims of the '427 patent. Kortek will suffer further irreparable

injury, for which it has no adequate remedy at law, unless and until Ferguson is enjoined from infringing the claims of the '427 patent.

60.     The claim chart attached hereto as **Exhibit G** describes how the elements of exemplary Claim 1 of the '427 patent are infringed by the Accused Products. As detailed in Exhibit G, the Accused Products—as exemplified by the Minka-Aire Nauticus F768L-BNW/CL Smart ceiling fan offered for sale and sold by Ferguson—practice every element of at least Claim 1 of the '427 patent, literally or under the doctrine of equivalents. Each Accused Product incorporates the same Olibra "Smart by Bond" Wi-Fi control module and infringes in the same general way, and the components and functionality identified in Exhibit G are representative of the components and functionality present in all Accused Products. Exhibit G provides details regarding only one example of Ferguson's infringement, and only as to a single patent claim, and is not intended to be an exhaustive or limiting explanation of every manner in which the Accused Products infringe the '427 patent. Plaintiff reserves its right to provide greater detail and scope via its Infringement Contentions at the time required under this Court's scheduling order.

**COUNT III**
**<u>PATENT INFRINGEMENT OF THE '869 PATENT</u>**

61.     Plaintiff restates and realleges the preceding paragraphs of this Complaint as if fully set forth herein.

62.     Ferguson has, under 35 U.S.C. § 271(a), directly infringed, and continues to directly infringe, literally and/or under the doctrine of equivalents, one or more claims, including without limitation at least one claim of the '869 patent, by making, using, testing, selling, offering for sale and/or importing into the United States Ferguson's Accused Products.

63.     Ferguson also indirectly infringes the '869 patent by actively inducing the direct infringement by third parties under 35 U.S.C. § 271(b). Ferguson has knowingly (since at least the

26

date of this Complaint) and intentionally actively aided, abetted and induced others to directly infringe at least one claim of the '869 patent (such as its customers in this District and throughout the United States). Ferguson continues to induce infringement of the '869 patent. For example, Ferguson sells the Accused Products with, and directs purchasers to, installation and setup instructions that walk the user through downloading the Bond Home application and completing the "Smart by Bond" setup process—including connecting the user's smartphone directly to the Accused Product's "Bond Config" Wi-Fi network and thereafter connecting the Accused Product to the user's home wireless network—operations that Exhibit H maps to elements of Claim 1 of the '869 patent. By distributing those instructions and directing its customers to follow them, Ferguson specifically intends that its customers configure and use the Accused Products in a manner that directly infringes the '869 patent. In the alternative, to the extent any element of any asserted claim of the '869 patent is found to be supplied by an end user's smartphone, tablet, or wireless network rather than by the Accused Products themselves, Ferguson has contributorily infringed and is a contributory infringer under 35 U.S.C. § 271(c). With knowledge of the '869 patent (since at least the date of this Complaint), Ferguson offers to sell and sells within the United States, and/or imports into the United States, the Accused Products, each of which incorporates an embedded Olibra "Smart by Bond" Wi-Fi control module that constitutes a material part of the invention claimed in the '869 patent and that is especially made and especially adapted for use in an infringement of the '869 patent. The embedded "Smart by Bond" Wi-Fi control module is not a staple article or commodity of commerce suitable for substantial noninfringing use: its only substantial use is to enable the accused wireless configuration and control functionality of the Accused Products in combination with the Bond Home application.

27

64.     Ferguson has knowledge that its activities concerning the Accused Products infringe one or more claims of the '869 patent. On information and belief, Ferguson will continue to encourage, aid, or otherwise cause third parties to import, sell, offer for sale, and use the Accused Products (which are acts of direct infringement of the '869 patent) and Ferguson has and will continue to encourage those acts with the specific intent to infringe one or more claims of the '869 patent. Further, Ferguson provides information and technical support to its customers, including product manuals, brochures, demonstrations, and website materials encouraging its customers to purchase and instructing them to use Ferguson's Accused Products (which are acts of direct infringement of the '869 patent). Alternatively, Ferguson knows and/or will know that there is a high probability that the importation, sale, offer for sale, and use of the Accused Products constitutes direct infringement of the '869 patent but took deliberate actions to avoid learning of these facts.

65.     On information and belief, Ferguson's infringement of the '869 patent has been willful and merits increased damages.

66.     On information and belief, Ferguson has known that its activities concerning the Accused Products infringed one or more claims of the '869 patent since at least the date of this Complaint.

67.     On information and belief, Ferguson has made no attempt to design around the claims of the '869 patent.

68.     On information and belief, Ferguson did not have a reasonable basis for believing that the claims of the '869 patent were invalid.

69.    On information and belief, Ferguson's Accused Products are available to businesses and individuals throughout the United States and in the State of Texas, including in this District.

70.    Kortek has been damaged as the result of Ferguson's willful infringement. Upon information and belief, Ferguson will continue to infringe one or more claims of the '869 patent unless and until it is enjoined by this Court.

71.    Ferguson has caused and will continue to cause Kortek irreparable injury and damage by infringing one or more claims of the '869 patent. Kortek will suffer further irreparable injury, for which it has no adequate remedy at law, unless and until Ferguson is enjoined from infringing the claims of the '869 patent.

72.    The claim chart attached hereto as **Exhibit H** describes how the elements of exemplary Claim 1 of the '869 patent are infringed by the Accused Products. As detailed in Exhibit H, the Accused Products—as exemplified by the Minka-Aire Nauticus F768L-BNW/CL Smart ceiling fan offered for sale and sold by Ferguson—practice every element of at least Claim 1 of the '869 patent, literally or under the doctrine of equivalents. Each Accused Product incorporates the same Olibra "Smart by Bond" Wi-Fi control module and infringes in the same general way, and the components and functionality identified in Exhibit H are representative of the components and functionality present in all Accused Products. Exhibit H provides details regarding only one example of Ferguson's infringement, and only as to a single patent claim, and is not intended to be an exhaustive or limiting explanation of every manner in which the Accused Products infringe the '869 patent. Plaintiff reserves its right to provide greater detail and scope via its Infringement Contentions at the time required under this Court's scheduling order.

29

## COUNT IV
## PATENT INFRINGEMENT OF THE '313 PATENT

73.    Plaintiff restates and realleges the preceding paragraphs of this Complaint as if fully set forth herein.

74.    Ferguson has, under 35 U.S.C. § 271(a), directly infringed, and continues to directly infringe, literally and/or under the doctrine of equivalents, one or more claims, including without limitation at least one claim of the '313 patent, by making, using, testing, selling, offering for sale and/or importing into the United States Ferguson's Accused Products.

75.    Ferguson also indirectly infringes the '313 patent by actively inducing the direct infringement by third parties under 35 U.S.C. § 271(b). Ferguson has knowingly (since at least the date of this Complaint) and intentionally actively aided, abetted and induced others to directly infringe at least one claim of the '313 patent (such as its customers in this District and throughout the United States). Ferguson continues to induce infringement of the '313 patent. For example, Ferguson sells the Accused Products with, and directs purchasers to, installation and setup instructions that walk the user through downloading the Bond Home application and completing the "Smart by Bond" setup process—including connecting the user's smartphone directly to the Accused Product's "Bond Config" Wi-Fi network and thereafter connecting the Accused Product to the user's home wireless network—operations that Exhibit I maps to elements of Claim 1 of the '313 patent. By distributing those instructions and directing its customers to follow them, Ferguson specifically intends that its customers configure and use the Accused Products in a manner that directly infringes the '313 patent. In the alternative, to the extent any element of any asserted claim of the '313 patent is found to be supplied by an end user's smartphone, tablet, or wireless network rather than by the Accused Products themselves, Ferguson has contributorily infringed and is a contributory infringer under 35 U.S.C. § 271(c). With knowledge of the '313 patent (since at least

30

the date of this Complaint), Ferguson offers to sell and sells within the United States, and/or imports into the United States, the Accused Products, each of which incorporates an embedded Olibra "Smart by Bond" Wi-Fi control module that constitutes a material part of the invention claimed in the '313 patent and that is especially made and especially adapted for use in an infringement of the '313 patent. The embedded "Smart by Bond" Wi-Fi control module is not a staple article or commodity of commerce suitable for substantial noninfringing use: its only substantial use is to enable the accused wireless configuration and control functionality of the Accused Products in combination with the Bond Home application.

76.     Ferguson has knowledge that its activities concerning the Accused Products infringe one or more claims of the '313 patent. On information and belief, Ferguson will continue to encourage, aid, or otherwise cause third parties to import, sell, offer for sale, and use the Accused Products (which are acts of direct infringement of the '313 patent) and Ferguson has and will continue to encourage those acts with the specific intent to infringe one or more claims of the '313 patent. Further, Ferguson provides information and technical support to its customers, including product manuals, brochures, demonstrations, and website materials encouraging its customers to purchase and instructing them to use Ferguson's Accused Products (which are acts of direct infringement of the '313 patent). Alternatively, Ferguson knows and/or will know that there is a high probability that the importation, sale, offer for sale, and use of the Accused Products constitutes direct infringement of the '313 patent but took deliberate actions to avoid learning of these facts.

77.     On information and belief, Ferguson's infringement of the '313 patent has been willful and merits increased damages.

78.    On information and belief, Ferguson has known that its activities concerning the Accused Products infringed one or more claims of the '313 patent since at least the date of this Complaint.

79.    On information and belief, Ferguson has made no attempt to design around the claims of the '313 patent.

80.    On information and belief, Ferguson did not have a reasonable basis for believing that the claims of the '313 patent were invalid.

81.    On information and belief, Ferguson's Accused Products are available to businesses and individuals throughout the United States and in the State of Texas, including in this District.

82.    Kortek has been damaged as the result of Ferguson's willful infringement. Upon information and belief, Ferguson will continue to infringe one or more claims of the '313 patent unless and until it is enjoined by this Court.

83.    Ferguson has caused and will continue to cause Kortek irreparable injury and damage by infringing one or more claims of the '313 patent. Kortek will suffer further irreparable injury, for which it has no adequate remedy at law, unless and until Ferguson is enjoined from infringing the claims of the '313 patent.

84.    The claim chart attached hereto as **Exhibit I** describes how the elements of exemplary Claim 1 of the '313 patent are infringed by the Accused Products. As detailed in Exhibit I, the Accused Products—as exemplified by the Minka-Aire Nauticus F768L-BNW/CL Smart ceiling fan offered for sale and sold by Ferguson—practice every element of at least Claim 1 of the '313 patent, literally or under the doctrine of equivalents. Each Accused Product incorporates the same Olibra "Smart by Bond" Wi-Fi control module and infringes in the same general way,

and the components and functionality identified in Exhibit I are representative of the components and functionality present in all Accused Products. Exhibit I provides details regarding only one example of Ferguson's infringement, and only as to a single patent claim, and is not intended to be an exhaustive or limiting explanation of every manner in which the Accused Products infringe the '313 patent. Plaintiff reserves its right to provide greater detail and scope via its Infringement Contentions at the time required under this Court's scheduling order.

**COUNT V**
**PATENT INFRINGEMENT OF THE '535 PATENT**

85. Plaintiff restates and realleges the preceding paragraphs of this Complaint as if fully set forth herein.

86. Ferguson has, under 35 U.S.C. § 271(a), directly infringed, and continues to directly infringe, literally and/or under the doctrine of equivalents, one or more claims, including without limitation at least one claim of the '535 patent, by making, using, testing, selling, offering for sale and/or importing into the United States Ferguson's Accused Products.

87. Ferguson also indirectly infringes the '535 patent by actively inducing the direct infringement by third parties under 35 U.S.C. § 271(b). Ferguson has knowingly (since at least the date of this Complaint) and intentionally actively aided, abetted and induced others to directly infringe at least one claim of the '535 patent (such as its customers in this District and throughout the United States). Ferguson continues to induce infringement of the '535 patent. For example, Ferguson sells the Accused Products with, and directs purchasers to, installation and setup instructions that walk the user through downloading the Bond Home application and completing the "Smart by Bond" setup process—including connecting the user's smartphone directly to the Accused Product's "Bond Config" Wi-Fi network and thereafter connecting the Accused Product to the user's home wireless network—operations that Exhibit J maps to elements of Claim 1 of the

'535 patent. By distributing those instructions and directing its customers to follow them, Ferguson specifically intends that its customers configure and use the Accused Products in a manner that directly infringes the '535 patent. In the alternative, to the extent any element of any asserted claim of the '535 patent is found to be supplied by an end user's smartphone, tablet, or wireless network rather than by the Accused Products themselves, Ferguson has contributorily infringed and is a contributory infringer under 35 U.S.C. § 271(c). With knowledge of the '535 patent (since at least the date of this Complaint), Ferguson offers to sell and sells within the United States, and/or imports into the United States, the Accused Products, each of which incorporates an embedded Olibra "Smart by Bond" Wi-Fi control module that constitutes a material part of the invention claimed in the '535 patent and that is especially made and especially adapted for use in an infringement of the '535 patent. The embedded "Smart by Bond" Wi-Fi control module is not a staple article or commodity of commerce suitable for substantial noninfringing use: its only substantial use is to enable the accused wireless configuration and control functionality of the Accused Products in combination with the Bond Home application.

88.    Ferguson has knowledge that its activities concerning the Accused Products infringe one or more claims of the '535 patent. On information and belief, Ferguson will continue to encourage, aid, or otherwise cause third parties to import, sell, offer for sale, and use the Accused Products (which are acts of direct infringement of the '535 patent) and Ferguson has and will continue to encourage those acts with the specific intent to infringe one or more claims of the '535 patent. Further, Ferguson provides information and technical support to its customers, including product manuals, brochures, demonstrations, and website materials encouraging its customers to purchase and instructing them to use Ferguson's Accused Products (which are acts of direct infringement of the '535 patent). Alternatively, Ferguson knows and/or will know that there is a

34

high probability that the importation, sale, offer for sale, and use of the Accused Products constitutes direct infringement of the '535 patent but took deliberate actions to avoid learning of these facts.

89. On information and belief, Ferguson's infringement of the '535 patent has been willful and merits increased damages.

90. On information and belief, Ferguson has known that its activities concerning the Accused Products infringed one or more claims of the '535 patent since at least the date of this Complaint.

91. On information and belief, Ferguson has made no attempt to design around the claims of the '535 patent.

92. On information and belief, Ferguson did not have a reasonable basis for believing that the claims of the '535 patent were invalid.

93. On information and belief, Ferguson's Accused Products are available to businesses and individuals throughout the United States and in the State of Texas, including in this District.

94. Kortek has been damaged as the result of Ferguson's willful infringement. Upon information and belief, Ferguson will continue to infringe one or more claims of the '535 patent unless and until it is enjoined by this Court.

95. Ferguson has caused and will continue to cause Kortek irreparable injury and damage by infringing one or more claims of the '535 patent. Kortek will suffer further irreparable injury, for which it has no adequate remedy at law, unless and until Ferguson is enjoined from infringing the claims of the '535 patent.

96.     The claim chart attached hereto as **Exhibit J** describes how the elements of exemplary Claim 1 of the '535 patent are infringed by the Accused Products. As detailed in Exhibit J, the Accused Products—as exemplified by the Minka-Aire Nauticus F768L-BNW/CL Smart ceiling fan offered for sale and sold by Ferguson—practice every element of at least Claim 1 of the '535 patent, literally or under the doctrine of equivalents. Each Accused Product incorporates the same Olibra "Smart by Bond" Wi-Fi control module and infringes in the same general way, and the components and functionality identified in Exhibit J are representative of the components and functionality present in all Accused Products. Exhibit J provides details regarding only one example of Ferguson's infringement, and only as to a single patent claim, and is not intended to be an exhaustive or limiting explanation of every manner in which the Accused Products infringe the '535 patent. Plaintiff reserves its right to provide greater detail and scope via its Infringement Contentions at the time required under this Court's scheduling order.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Kortek respectfully requests the following relief:

A.      A judgment that Ferguson has directly infringed, either literally and/or under the doctrine of equivalents, and continues to directly infringe the Kortek Patents;

B.      A judgment that Ferguson has induced infringement and continues to induce infringement of the Kortek Patents;

C.      A judgment that Ferguson has contributorily infringed and continues to contributorily infringe the Kortek Patents;

D.      A judgment and order requiring Ferguson to pay Plaintiff damages under 35 U.S.C. § 284, including treble damages for willful infringement as provided by 35 U.S.C. § 284, and

supplemental damages for any continuing post-verdict infringement through entry of the final judgment with an accounting as needed;

E.     A judgment that this is an exceptional case within the meaning of 35 U.S.C. § 285 and Plaintiff is therefore entitled to reasonable attorneys' fees;

F.     A judgment and order requiring Ferguson to pay Plaintiff pre-judgment and post-judgment interest on the damages awarded;

G.     A judgment and order awarding a compulsory ongoing royalty;

H.     A judgment and order awarding Plaintiff costs associated with bringing this action;

I.     A judgment granting a preliminary and permanent injunction that restrains and enjoins Ferguson, its officers, directors, divisions, employees, agents, servants, parents, subsidiaries, successors, assigns, and all those in privity, concert or participation with them from directly or indirectly infringing the Kortek Patents; and

J.     Such other and further relief as the Court deems just and equitable.

## JURY TRIAL DEMANDED

Pursuant to FED. R. CIV. P. 38, Plaintiff Kortek hereby demands a trial by jury on all issues so triable.

Dated: August 11, 2026

Respectfully submitted,

By: */s/ Erick S. Robinson*
Erick S. Robinson (Lead Counsel)
Texas Bar No. 24039142
Gregory Love
Texas Bar No. 24013060
CHERRY JOHNSON SIEGMUND JAMES PC
104 E Houston Street, Suite 115
Marshall, Texas 75670
Telephone: (713) 498-6047
Facsimile: (713) 583-9737
erobinson@cjsjlaw.com
glove@cjsjlaw.com

Mark D. Siegmund
Texas Bar No. 24117055
Shuya "Grace" Yang
Texas Bar No. 24144144
CHERRY JOHNSON SIEGMUND JAMES PC
Bridgeview Center
7901 Fish Pond Road, 2nd Floor
Waco, Texas 76710
Telephone: (254) 732-2242
Facsimile: (866) 627-3509
msiegmund@cjsjlaw.com
gyang@cjsjlaw.com

Shaun Gregory
Virginia Bar No. 86349 (admitted in this District)
CHERRY JOHNSON SIEGMUND JAMES PC
One Glen Lakes Tower
8140 Walnut Hill Lane, Suite 105
Dallas, Texas 75231
Telephone: (254) 732-2242
Facsimile: (866) 627-3509
sgregory@CJSJLAW.com

*Attorneys for Plaintiff*
*Kortek Industries Pty Ltd.*

38